**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**ANDRES GOMEZ**, Individually,

        Plaintiffs,

                                               Case no: 1:16-cv-24965-FAM

v.

**WINN-DIXIE STORES, INC.**,

        Defendant.

_____/

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

Andres Gomez is visually impaired to the extent that he is unable to read computer materials and/or access and comprehend internet website information without Screen Reader Software. That software reads aloud the information on the website if the website has been coded to be compatible with screen reader technology. Defendant, Winn-Dixie owns and operates a series of grocery stores and pharmacies throughout the South East United States. The Defendant has established and maintains a website, www.winn-dixie.com. The website, according to the Defendant, "provides information" concerning its stores [D.E. 10, p. 2]. More specifically, the website tells potential customers where stores are located and their hours of operation. The website seeks to entice customers through store programs and special offers. One can even obtain store coupons and re-fill prescriptions at Winn-Dixie pharmacies via the website. The website, in short, is the gateway to the Defendant's stores.

There can be no dispute that the Defendant's stores are places of public accommodation, 42 U.S.C. 12181 (E) & (F), *see,* [D.E. 10, p. 2]. The Defendant's website cannot be described as anything other than "an extension of, is in conjunction with, is

complementary and supplemental to" its physical locations [D.E. 1, ¶ 9]. Because of the

Defendant's refusal to code it's website to be compatible with screen reader technology

Statement of Material Facts, ¶9)[1] the visually impaired cannot locate stores, participate in store

programs, obtain coupons or refill prescriptions via the Internet. Mr. Gomez is a customer of

Winn-Dixie (Statement, ¶ 8). Because he cannot access the Defendant's website, the Plaintiff

cannot locate stores or find their hours of operation without help. Likewise, he is unable to learn

about store programs and special offers or obtain coupons via the internet without assistance or

physically going to a store (Statement, ¶ 10).  Because the Defendant has not coded its website,

Mr. Gomez is certain to encounter the same problems when he attempts to access the website in

the future. The Plaintiff and all who are  visually impaired are thus denied the "full and equal

enjoyment of the goods, *services*, facilities, privileges, [and] *advantages"* the Defendant affords

to everyone else, 42 U.S.C. 12101(a)(italics added) and that violates the law.

## II. THE LAW.

### A. The Americans With Disabilities Act

In enacting the Americans with Disabilities Act ("ADA"), Congress noted that the

many forms such discrimination takes include "outright intentional exclusion" as well as the

"failure to make modifications to existing facilities and practices." 42. U.S.C. § 12101(a)(5).

Congress concluded that there was a "compelling need...[for a] clear and comprehensive national

mandate" to eliminate discrimination against disabled individuals, and to integrate them "into the

economic and social mainstream of American life."   S. Rep. No. 101-116, p. 20 (1989);  H.R.

Rep. No. 101-485, pt. 2, p. 50 (1990), U.S.Code Cong. & Admin.News 1990, pt. 2, pp. 303, 332.

---

[1]Hereinafter, "Statement, followed by a paragraph number."

Title III of the ADA prescribes, as a "[g]eneral rule":

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), operates a place of public accommodation.

42 U.S.C. § 12182(a).

"Disability" means, with respect to an individual: a physical or mental impairment that substantially limits one or more of the major life activities of such individual, a record of such an impairment, or being regarded as having such an impairment.  42 U.S.C. §12102(2). The phrase "public accommodation" is defined in terms of twelve (12) non-exhaustive[2] categories and specifically includes grocery stores, 42 U.S.C. 12181(7)(E).

## B. "The Longstanding Existing Obligation"

Congress delegated to the Department of Justice the authority to both to promulgate regulations under, and *issue technical assistance* concerning Title III, 42 U.S.C. §§ 12186(b), 12188(b), 12206. Thus, the Department's views are entitled to deference. *Bragdon v. Abbott*, 524 U.S. 624, 646 (1998) ("As the agency directed by Congress to issue implementing regulations, . . . *to render technical assistance explaining the responsibilities of covered individuals and institutions*, . . and to enforce Title III in court, . . . the Department [of Justice]'s views are entitled to deference.")(italics added); *Scribd*, 97 F. Supp. 3d at 575("Given the DOJ's body of experience the Court will give some deference to its conclusion that the ADA applies to websites covered by one of the categories in the statute").

The views of the DOJ are clear:

> Consistent with the text and legislative history of the ADA, the *Department of Justice (Department) has long affirmed the application of Title III*

---

[2]*Stevens v. Premier Cruses, Inc.*, 215 F.3d. 1237 (11th Cir. 2000).

*of the ADA to websites* of public accommodations. The Department is engaged in rulemaking to consider whether specific requirements or technical standards for website accessibility should be developed, but *this does not undermine or change public accommodations' longstanding existing obligation to ensure equal access to their goods and services, including those offered via a website, for individuals with disabilities.*

(Statement of Interest of the United States of America, Ex. "A"hereto, p. 7 & authorities cited)(italics added)(hereinafter, "Statement of Interest"); *Gil v. Winn-Dixie Stores, Inc.,* case no: 1:16-cv-23026-RSN [D.E. 63](S.D. Fla. 2017)(finding the Defendant's website violated the A.D.A. and ordering the website be brought into compliance with the industry standard WCAG 2.0)[D.E. 37-3].

### C. Precedent Compels the Same Result.

What is perhaps the most directly relevant case to the issue before this Court is the Eleventh Circuit's decision in *Rendon v. Valleycrest Prod., Ltd.* 294 F.3d 1279 (11th Cir. 2002). The defendants in *Rendon* produced a television game show filmed in a studio. To qualify as a contestant, one had to "audition" via an automated telephone answering system on which a recorded message prompted potential contestants to answer a series of questions. Callers recorded their answers by pressing the appropriate keys on their telephone keypads.  The Plaintiffs were unable to utilize the system either because they were deaf and could not hear the questions or because they could not move their fingers rapidly enough to record their answers on their telephone key pads. The Plaintiffs believed that they could be reasonably accommodated through the use of several well established technological devices, such as a TDD machine.

The Defendants moved to dismiss arguing that the Title III requirements did not apply to the contestant telephone line because the protections of Title III are limited to physical

locations. Granting that motion, the district court agreed. The Eleventh Circuit, reversing the

lower court, saw matters differently.

Concluding that the studio where the game was filmed constituted a place of

public accommodation, the Court of Appeals wrote:

> Title III covers both tangible barriers ... and *intangible barriers*, such as
> eligibility requirements and screening rules or *discriminatory policies*
> *and procedures that restrict a disabled person's ability to enjoy the*
> *defendant entity's goods services and privileges*, see 42 U.S.C.
> §12182(b)(2)(A)(I)-(ii).

*Rendon,* 294 F.3d., at 1283 (italics added).

The defendants, the Eleventh Circuit went on, "urge us to hold, in effect, that as

long as discrimination occurs off site, it does not offend Title III," *id*., at 1285. The Court's

response, citing extensive precedent, was blunt: "we do not believe this is a tenable reading of

Title III," *id.*

Allowing for the fact that the technology has progressed from a telephone line and

TDD machine to the Internet and a screen reader, there can be no principled difference between

the facts of *Rendon* and those of this case. Each case involved a means of communication that,

without some accommodation, served to exclude the disabled. While the Eleventh Circuit's

opinion does not appear to be so limited, in both cases, that means of communication was

associated with a location that was unquestionably a place of public accommodation. On those

facts, the law is clear. Discrimination at a distance violates the law. In *Gil v. Winn-Dixie Stores,*

*Inc.*, *supra,* the Court, after a bench trial, and citing *Rendon*, drew that precise conclusion. Winn-

Dixie's website was "heavily integrated with Winn-Dixie's physical store locations and operates

as a gateway to the physical store," the Court found [D.E. 63, p. 9]. Because its website was

inaccessible to the visually impaired, the Defendant violated the A.D.A. Also, *Nat'l Fed'n of the*

*Blind v. Target Corp.*, 452 F.Supp. 2d 946 (N.D. Cal. 2006); *Nat'l Ass'n of the Deaf v. NetFlix,Inc.*, 869 F. Supp. 2d 196 (D. Mass 2012); *Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F. Supp 3d 565 (D. Vt. 2015), *see*, Statement of Interest, *supra.*

In his complaint, Mr. Gomez states that the Defendant's website is "an extension of, is in conjunction with, is complementary and supplemental to" its physical locations [D.E. 1, ¶ 5]. Even under the narrowest interpretation of *Rendon*, as the Court concluded, in *Gil*, is sufficient establish a violation of the A.D.A.

### D. The Defendant's Website *Is* a Place of Public Accommodation.

The ADA prohibits discrimination by public accommodations stating that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations *of* any place of public accommodation by any person who owns, leases (or leases to) or operates a place of public accommodation." 42 U.S.C. §12182(a); 28 C.F.R. 36.201(a). (emphasis added). Notably, the statute plainly applies to the services *of* a place of public accommodation, not services *in* a place of public accommodation, *See, Nat'l Fed'n of the Blind v. Target Corp*, 452 F. Supp. 2d 946, 953 (N.D. Cal. 2006)(Limiting Title III to discrimination "occurring on the premises would contradict the plain language of the statute"). A place of public accommodation, in turn, is described a private entity whose operations fall within at least one of illustrative twelve categories. Those categories include restaurants and other sales establishments, 42 U.S.C. 12181(7)(B), travel services, the office of an accountant or lawyer, insurance offices, pharmacies and other "service establishments," 42 U.S.C. 12181(7)(F). In *Carparts Distrib. Ctr., Inc., v. Automotive Wholesaler's Assoc. Of New England, Inc.*, 37 F. 3d 12 (1st Cir. 1994), the court,

finding that  Title III was not limited to physical spaces, pointed to a "travel service," a business specifically identified in the statute as being subject to the requirements of the ADA, as an example of an enterprise that could well conduct all of its operations via phone or mail with no physical location visited by the public.

As the court noted in *Nat'l Ass'n of the Deaf v. Netflix, Inc*., 869 F. Supp. 2d 196199 (D. Mass. 2012), at the time of the enactment of the A.D.A, Congress intended that "the types of accommodations and services provided to individuals with disabilities ... should keep pace with the rapidly changing technology of the times, *Netflix*, 869 F. Supp. 2d, at 200 (citing H.R. Rep. 101-485(II) at 108 (1990); *Natn'l Fed'n of the Blind v. Scribd, Inc.*, 97 F. Supp. 3d 565, 574 (D. Vt. 2015)(same). In addition to the travel agency mentioned in *Carparts,* and streaming services, such as *Netflix*, there are virtual pharmacies, virtual accounting firms, and virtual law firms. Retail establishments having physical locations may be going the way of the dinosaur. Think "Amazon." To rule as the Defendant urges that the A.D.A. requires a physical location would move the A.D.A. along the same path. Any business could exempt itself from the requirements of the A.D.A. by doing no more than relocating to cyberspace. Even for businesses that choose to remain in, as it were, the real world, imposing a requirement that a physical location is required produces absurd results to say nothing of arbitrary treatment. To borrow and elaborate upon the example used by the court in *Scribd*, a visually impaired customer who bought a insurance policy in the company's office would be protected by the A.D.A. A customer who bought the same policy from a door to door salesman would not, *Srcibd*, 97 F. Supp. 3d, at 572-73.  Today, that policy, if not bought in the home office, would most likely be purchased via the Internet. The advance in the technology aside, there can be no principled distinction between

the two situations. To fail to apply the A.D.A. to websites leads to absurd results and, worse still, sanctions discrimination against the disabled.

Perhaps not surprisingly, and as noted above, the Department of Justice has been clear that the ADA applies to web sites. The fact that the Department is presently engaged in rulemaking to consider whether specific requirements or technical standards should be developed, does not "change the public accommodations' longstanding existing obligation to ensure equal access to their goods and services ...." Statement of Interest, p.7].

While there may be a split in among the circuits with respect to the issue of whether or not an entity whose operations exist only in cyberspace are subject to the A.D.A., *see*, Statement of Interest, p. 11-13 (collecting cases), as was discussed above, however, the Defendant's website *is* connected with its physical locations.

### E. The Defendant's Website Is, Itself, a Barrier

Even were the Defendant's website not a place of public accommodation either because of its connection to the Defendant's physical stores or as a stand alone, it constitutes a barrier to access the goods and services afforded to at the Defendant's physical locations. Under the A.D.A., "discrimination" includes a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such services to the disabled, 42 U.S.C. 12182(b)(2)(A)(ii). Discrimination also occurs when a covered entity "fails to take such steps as may be necessary to insure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids or services" 42 U.S.C. 12182(b)(2)(A)(iii). Finally, it is discrimination

to fail "to remove architectural barriers, and *communication barriers*..." 42 U.S.C. 12182(b)(2)(A)(iv)(italics added).

As applied here, even something so simple as locating one of the Defendant's stores or its hours of operation is made more difficult for the visually impaired than it is for those who can read a computer screen because of the Defendant's refusal to code its website so that it can be read by a screen reader. The visually impaired would not even know that coupons are available let alone be able to obtain them as easily as a sighted person for the same reason. In both instances, the Defendant has failed to modify its policies and failed to take the steps as are plainly necessary to insure that the disabled are not denied services. The same applies to all of the services and information the Defendant has chosen to make available via the Internet to all – except, that is, the visually impaired. Simply put, the defendant fails to insure that individuals with a disability are not excluded, denied services, segregated, or otherwise treated differently than those who are not disabled.

### III. THE DEFENDANT IS ESTOPPED FROM RELITIGATING AN ISSUE IT LOST.

As noted above, this is not the first time the Defendant has been sued for website related A.D.A. violations. In *Gil, supra,* after a bench trial, the Court found that the Defendant liable and ordered various remedial measures taken. During the course of the present lawsuit, the Defendant has repeatedly represented that the two cases are, for all intents and purposes, identical.

In *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327-328 (1979), the Supreme Court approved the application of "offensive collateral estoppel" where the same defendant lost in a prior case against a different plaintiff, *see, Blonder-Tongue Labs. v. University of Illinois*

*Found*., 402 U.S. 313( 1971). The rationale behind non-mutual collateral estoppel is to prevent a

party from being able to relitigate an issue where that party "had a full an fair opportunity to

litigate the issue in the earlier proceeding." *Pierce v. Ritter*, 133 F. Supp. 2d 1344, 1347 (S.D.

Fla. 2001).  The Eleventh Circuit has endorsed this type of collateral estoppel when several

prerequisites to the application are present. For a court to apply nonmutual collateral estoppel the

issue at stake (1) must be identical to the one alleged in the prior litigation; (2) the issue must

have been actually litigated; and (3) the determination in the prior proceeding must have been a

crucial and necessary part of the judgment in the earlier action. *Pierce*, 133 F.Supp. 2d. at 1347;

*Hart v. Yamaha-Parts Distributors, Inc*., 787 F.2d 1468, 1473 (11th Cir. 1986).

In *Graham v. R.J. Reynolds Tobacco Co.*, 857 F.3d 1169 (11th Cir, 2017), the

Eleventh Circuit upheld the application of the doctrine against R.J. Reynolds. Specifically, the

Court of Appeals approved the application of the findings of defendant's liability from one case

in a second case by different plaintiffs. There, the tobacco company was found liable in a state

court involving one set of plaintiffs. In a subsequent lawsuit, different plaintiffs sought

application of res judicata, claim preclusion and issue preclusion for a finding of identical

liability against the same defendant. The Eleventh Circuit concluded that the defendant had been

afforded due process, they were not denied notice or opportunity to be heard, they had a full and

fair opportunity to litigate the issues of liability common to the first and second cases. *Id*., at.

1184.

In the words of the Defendant, "The factual and legal allegations asserted and the

cause of action alleged in this case are completely identical to the allegations within the *Gil* Action"

[D.E. 22, p.1]. The requests for relief in both cases were, likewise, "identical" [D.E. 22, p. 4]. The

Defendant has taken that position repeatedly [D.E. 8, p.1; D.E. 22; D.E. 37, p. 1]. Thus, the

Defendant cannot claim the opposite. Similarly, and as the Defendant's own pleadings also

establish, the issues were actually litigated in a bench trial. The issues adjudicated in *Gil* and

involved here cannot be described as anything except a necessary part of the latter action.

Finally, and as the Defendant has also argued, albeit for a different purpose, applying the

doctrine of offensive collateral estoppel would " prevent the needless duplication of work
required by the

Court, and eliminate the possibility of conflicting rulings" [D.E. 22, p. 1]. All of the foregoing

considerations, have been espoused by the Defendant or are self evident. Thus, the decision in

*Gil* should preclude the Defendant's relitigating the issues resolved against it *Gil.*

## IV. CONCLUSION.

To state a claim under the Americans With Disabilities Act, a plaintiff need only

allege that (1) he is disabled, (2) that the property he visited is a place of public accommodation,

and (3) that he was denied full and equal treatment because of his disability. *E.g., Access Now,*

*Inc., v. S. Fla. Stadium Corp.*, 161 F. Supp. 2d 1357, 1363 (S.D. Fla 2001). There must also be a

showing of irreparable injury. There is nothing in the record to establish that the barriers to

access described Complaint have been eliminated. Because viewing the Defendant's website is

dependent on nothing but his own volition, *Houston v. Marod Supermarkets, Inc*., 733 F.3d

1323, 1337 (11th Cir. 2013), it is virtually certain that, when Mr. Gomez accesses the

Defendant's website, he will, again, encounter the same barriers to access. Even were the Court

not to apply collateral estoppel, and allow the Defendant a second bite at the apple, and even

were a stand alone website not a place of public accommodation, the Defendant' stores are

places of public accommodation to which its website is the gateway. That same website is, independently, a barrier to access. Both violate the law.

**WHEREFORE,** Plaintiff, Andres Gomez requests this Court enter summary judgment in his favor.

**I HEREBY CERTIFY** that, on August 25, 2017, I electronically filed the foregoing  with the Clerk of the Court using the CM/ECF system which will automatically send e-mail notification of such filing to the attorneys of record.

*/s/ Philip Michael Cullen, III, Esq.*
Fla. Bar No: 167853
Thomas B. Bacon, P.A.
621 South Federal Highway, Suite Four
Fort Lauderdale, Florida 33301
Telephone; (954) 462-0600
Facsimile: (954) 462-1717
cullen@thomasbaconlaw.com